## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Case No.: 19-CR-00002 (RC/DAR)** |
| | : | |
| **v.** | : | |
| | : | |
| **BENG SUN KOH,** | : | |
| **Also known as MICHAEL KOH,** | : | |
| **Defendant** | : | |

## GOVERNMENT'S MOTION FOR DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Motion for Detention.

## BACKGROUND

### I.      Procedural History

On January 2, 2019, Defendant Beng Sun Koh, also known as Micheal Koh (Defendant), was charged pursuant to a one-count indictment with conspiring to divert U.S.-origin goods to Iran without the required licenses from the United States, in violation of the International Emergency Economic Powers Act (IEEPA), 50 U.S.C §§ 1701-1706. ECF No. 1. Defendant was arrested that same day and arraigned in the Eastern District of New York on January 3, 2019, before being transported to this district.

Defendant made his initial appearance before U.S. Magistrate Judge Deborah A. Robinson on January 17, 2019. On that same date, pursuant to the government's oral motion for a detention hearing under 18 U.S.C. § 3142(f)(2)(A) and Defendant's oral motion for a delay of that hearing pursuant to good cause, Judge Robinson ordered that Defendant be held to January 29, 2019. Also

on January 17, 2019, Judge Robinson informed the parties that any Speedy Trial Act findings should be made by U.S. District Judge Contreras.

On January 22, 2019, this Court held a status conference in this case. At the status conference, the Court made Speedy Trial Act findings for the period January 17, 2019, to January 29, 2019, and scheduled the next status conference for February 22, 2019. On January 28, 2019, the parties filed a Joint Motion to Continue Detention Hearing for Good Cause, requesting that the detention hearing set for January 29, 2019, before Judge Robinson be continued to February 11 or 12, 2019, and that the Court make Speedy Trial Act findings for the period from January 29, 2019, to February 11, 2019. On January 30, 2019, Judge Robinson granted that motion and ordered that the detention hearing be held before this Court on February 11, 2019.

## II.     Factual Summary

The following facts are derived from the indictment filed in this case. Defendant had an ongoing business relationship with an identified coconspirator (referred to as PERSON 1 in the indictment), who Defendant knew was an Iranian national, and who was associated with a company located in Tehran, Iran. This relationship produced at least $1 million in transactions between Defendant and PERSON 1 from in or about 2011 to in or about 2013. Beginning in at least January 2014, PERSON 1 would supply Defendant with orders for various products, including U.S.-origin goods manufactured by a company based in the United States (U.S. COMPANY). Defendant would arrange with an authorized reseller of U.S. COMPANY to have that company's products shipped to Singapore. Defendant would attempt to hide the true location and nature of the end users, stating that the end users were in Vietnam, when in fact the goods were to go to Singapore and on to the United Arab Emirates, and then transshipped for PERSON 1 to Iran. Defendant would solicit the assistance of other conspirators to provide answers on end

use certificates that would pass muster with U.S. COMPANY, knowing that the products were destined for another location.

In the course of the conspiracy, Defendant and other conspirators, among other things: (1) intentionally concealed from U.S. COMPANY, and the subsequent acquirer of a product line of this company, the true nature of the ultimate end use and the true identities of the ultimate end users of the U.S.-origin goods, by providing false and misleading information about the ultimate end use and end users; (2) intentionally caused to be submitted false Electronic Export Information (EEI) to the United States government, concealing from the United States Government the true nature of the ultimate end use and the true identities of the ultimate end users of the U.S.-origin goods; and (3) caused the U.S.-origin goods to be exported from the United States to individuals and entities located in Iran through Singapore and the United Arab Emirates without obtaining a license from the United States Department of the Treasury, Office of Foreign Assets Control (OFAC), located in the District of Columbia.

The first transaction alleged in the indictment began with a January 13, 2014 order from PERSON 1's company in Iran to Defendant for the purchase of five gas chromatography systems manufactured by U.S. COMPANY (hereinafter, the "GC systems"). This order culminated in a sale and later shipment of the goods to Tehran, Iran. In order to get these systems from U.S. COMPANY to PERSON 1, Defendant and PERSON 1 engaged in a convoluted series of transactions that disguised the true purchaser with a false end user

During the course of the GC systems transaction, Defendant sent an end use certificate falsely stating that the end user of the five GC systems was Defendant's own company in Vietnam and falsely stating that the goods would not be reexported, directly or indirectly, in contravention to applicable (re-) export laws and regulations. Defendant also emailed PERSON 1 asking what

the end use for the five GC systems was, even though Defendant had represented that Defendant's own company in Vietnam was the end user. And Defendant falsely claimed that his alleged government buyer would not provide its name for the end use certificate and that the installation of the five GC Systems was in Vietnam. Additionally, Defendant caused the freight forwarding company to file an EEI Detail Sheet with the United States Department of Commerce that indicated that the five GC Systems had left the United States with an intermediate consignee of Defendant's company in Singapore, and, pursuant to information provided by Defendant, falsely listed the Ultimate Consignee as a company in Hanoi, Vietnam. Finally, Defendant directed that the goods be sent to the United Arab Emirates with a false invoice to be used for customs and directed that a false air waybill be used describing the goods as "medical equipment."

The second transaction began with a July 21, 2014 request from PERSON 1 to Defendant that Defendant obtain an order for two U.S.-origin Electron Capture Detectors (ECDs) manufactured by U.S. COMPANY. The ECDs are believed to have been destined for Iran, although Defendant falsely claimed that he was arranging shipment into Vietnam.

During the course of this transaction, PERSON 1 sent Defendant a purchase order, on the letterhead of one of PERSON 1's companies in Iran, that included the two ECDs. Despite this order, Defendant misleading told U.S. COMPANY's distributor in Vietnam that Defendant's own company in Vietnam would be the end user and sent this distributor an end use certificate that falsely identified his company in Vietnam as the end user. The certificate also falsely described the products as "pharmaceutical," and falsely stated that "the products will not be re-sold in or transferred to . . . any U.S. sanctioned or embargoed countries." Contrary to these representations, Defendant agreed to send the ECDs to the United Arab Emirates. The government believes that Defendant knew full well that the goods were intended for Iran. Moreover, Defendant, at PERSON

1's direction, separated the manuals and compact disc that came with the ECDs, and after stating that he could not send any documents to Tehran, Iran, sent those materials to the United Arab Emirates for PERSON 1.

As noted above, the indictment outlines two particular transactions involving the purchase of U.S.-origin goods for ultimate use in Iran. The government is investigating other transactions involving the sale of U.S.-origin goods by Defendant to PERSON 1 for ultimate shipment to Iran. Moreover, in March 2017, PERSON 1 and Defendant discussed registering a laboratory in a free zone in Vietnam. In April 2017, PERSON 1 told Defendant that "I want to mention, it is better that this company registration in Dubai be in the name of a non-Iranian resident," and asked Defendant to come to Dubai to register the company. Law enforcement agents seized and searched Defendant's phone and computer on or about February 1, 2018, pursuant to a search warrant. Located on the computer was a document that appears to permit Sahlabadi to act as Defendant's power of attorney concerning "any company in our names in UAE." It appears that Defendant registered a purported free zone trading company on August 24, 2017, in Ras Al Khaimah (Juffar), UAE. Apparently PERSON 1 and Defendant were trying to bypass the problem of finding an end user by setting up a default end user in Dubai.

## ARGUMENT

The government respectfully submits that no condition or combination of conditions will reasonably assure Defendant's appearance at trial and any pretrial proceedings. Accordingly, the Court should order Defendant detained pending trial.

### I.    Principles Governing Requests for Detention

Under the Bail Reform Act, courts consider the following factors in determining whether some condition, or combination of conditions, will reasonably assure a defendant's appearance at

trial and pretrial proceedings: the nature and circumstances of the charged offenses; the weight of the evidence against the defendant; the history and characteristics of the defendant; and the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *see United States v. Bikundi*, 47 F. Supp. 3d 131, 133-34 (D.D.C. 2014); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 42-43 & n.1 (D.D.C. 2013). As detailed below, each of these factors supports the government's position that Defendant is a flight risk and that no condition or combination of conditions can reasonably assure Defendant's appearance at trial and any pretrial proceedings.

A serious risk of flight alone is sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986). Where the justification for detention is serious risk of flight, the decision must be supported by a preponderance of the evidence. *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

At a detention hearing, the government may present evidence by way of a proffer. *See United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996); *United States v. Roberson*, No. 15-cr-121, 2015 WL 6673834, at *1 (D.D.C. Oct. 30, 2015). When the government seeks to detain a defendant on the ground that the defendant is a risk of flight pursuant to 18 U.S.C. § 3142 (f)(2)(A), the government must demonstrate the defendant's flight risk by a preponderance of the evidence. *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

## II.    Application of Bail Reform Act  Factors to This Case

### A.  Nature and Circumstances of the Charged Offenses

The nature and circumstances of the offense weigh in favor of detention in this case. Defendant is charged with conspiring to unlawfully export U.S.-origin goods to Iran—a state

sponsor of terrorism—and to defraud the United States. Defendant is facing a maximum possible sentence of 20 years. *See* 50 U.S.C. § 1705(c). Further, the offense level for the charged offense is level 26 since the exports relate to national security controls. *See United States v. McKeeve*, 131 F.3d 1, 14 (1st Cir. 1997) (holding that an IEEPA violation is an evasion of a national security control, regardless of the nature of the good itself); *see also United States v. Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) ("the serious nature" of the offenses charged and "the punishments Congress has provided for those offenses" provided the defendant—who had substantial ties to a country with which the United States has no extradition treaty—"a substantial incentive to flee the United States.").

### B. Weight of the Evidence Against Defendant

The Court must consider the weight of the evidence in assessing the risk of flight. 18 U.S.C. § 3142(g)(2). The evidence in this case is substantial—including detailed documentation of the specific transactions alleged in the indictment, such as emails, purchase orders, invoices, evidence of payment, shipping documents, and the false end use certificates and EEI. The evidence includes a forensic image of Defendant's cellular telephone, which indicates that, at least since November 23, 2014 (in the midst of the ECD transaction), Defendant appears to have designated PERSON 1's name in his cellphone contact list as "[PERSON 1'S FIRST NAME] Iran." Defendant also has texted about PERSON 1's Iranian status, stating, for example, on June 23, 2015, that "[PERSON 1'S FIRST NAME] I know you in Iran . . . We are partner so anything just be open with me." More recent evidence indicates a new scheme to evade IEEPA and related export controls, as discussed above.

### C.  History and Characteristics of Defendant

This factor also weighs in favor of detention. Although he has no known criminal history, Defendant is a foreign national with no known ties to the United States or the Washington, D.C. area. He was arrested when he traveled to the United States for vacation and a business trip. Now that he has been charged with a serious criminal offense, he has a disincentive to return to the United States if released on bond.

### D.  Nature and Seriousness of Danger to Any Person or to the Community

The fourth factor also weighs in favor of detention. While this factor has "minimal relevance" in cases where the government is requesting detention solely based on risk of flight, *see United States v. Bikundi*, 47 F. Supp. 3d 131, 137 (D.D.C. 2014), it is nevertheless significant that Defendant has been selling U.S.-origin goods for ultimate shipment to Iran, the government of which is a state sponsor of terrorism.

**CONCLUSION**

At the detention hearing, the government will be able to demonstrate by a preponderance of the evidence that, if he were to be released, no condition or combination of conditions would reasonably assure Defendant's presence at trial and any pretrial proceedings. Accordingly, Defendant should be held pending trial.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY


BY:      /s/
         Jeffrey Pearlman
         DC. Bar No. 466901
         Jolie F. Zimmerman
         D.C. Bar No. 465110
         Assistant United States Attorneys
         United States Attorney's Office
         National Security Section
         555 4th Street NW, 11th Floor
         Washington, D.C. 20530
         (202) 252-7228
         jeffrey.pearlman@usdoj.gov
         (202) 252-7220
         jolie.zimmerman@usdoj.gov

<u>Certificate of Service</u>

I HEREBY CERTIFY that a copy of the foregoing Motion was delivered via the Court's electronic filing system to Jason M. Silverman and Melissa Gomez Nelson, counsel for Defendant, this 8th day of February, 2019.

_____/s/_____

Jolie F. Zimmerman
Assistant United States Attorney